# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHELLY ULITCHNEY, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:07-2189 |
| v. | : | (MANNION, M.J.) |
| JEFF RUZICKI, | : | |
| Defendant | : | |

## **MEMORANDUM AND ORDER**[1]

Pending before the court is the defendant's post-trial motion for judgment as a matter of law. (Doc. No. 71). Upon review, because the court believes its' prior ruling was in error, the defendant's motion will be granted and the Clerk of Court will be directed to enter judgment in favor of the defendant.

## I. PROCEDURAL HISTORY

By way of relevant background, on December 3, 2007, the plaintiff initiated the instant civil rights action alleging Fourth Amendment unlawful entry and seizure claims, as well as a Fourteenth Amendment due process claim, in relation to the arrest of a parole violator by the defendant at the plaintiff's residence on December 11, 2006. (Doc. No. 1).

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

At the close of discovery, the defendant moved for summary judgment arguing that, pursuant to the Supreme Court's decision in Payton v. New York, 455 U.S. 573 (1980), it was lawful for him to enter the plaintiff's residence to effect an arrest without a warrant, if the subject of the arrest was both residing at and present inside the residence. Defendant Ruzicki further argued that the plaintiff failed to state valid Fourth Amendment unlawful seizure and Fourteenth Amendment due process claims.

In considering the defendant's motion, the court agreed that the defendant was entitled to summary judgment on the plaintiff's Fourth Amendment unlawful seizure and Fourteenth Amendment due process claims. The court disagreed, however, that the defendant was entitled to summary judgment with respect to the plaintiff's Fourth Amendment unlawful entry claim. In ruling on the unlawful entry claim, the court found as follows:

> " . . . absent consent or exigent circumstances, entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a valid warrant. Payton v. New York, 445 U.S. 573 (1980). If officials possess an arrest warrant founded on probable cause, they may enter a house in which the suspect lives when there is also reason to believe that the suspect is within the home. Id. However, officials may not enter the residence of a third party in the belief that a fugitive may be inside absent a valid search warrant. Steagald v. United States, 451 U.S. 204, 212 (1981). In Steagald, which was also a §1983 action, the Court assumed police had probable cause to believe that a fugitive was a guest in the home to be searched. Id. at 213. However, the court noted that allowing the police to determine whether probable cause existed to search the third party's home, even pursuant to a valid arrest warrant, did not provide sufficient protection to the third party. Id. at 211. Otherwise, the Court noted that a valid arrest warrant could be

used to search the homes of any of the suspect's friends or acquaintances. Id. at 215. Given the findings in Payton and Steagald, entry into a residence without a search warrant is *per se* impermissible unless the search is consensual, under exigent circumstances, or into a suspect's own home pursuant to a valid arrest warrant and with reason to believe that the suspect is inside. Payton, 445 U.S. at 602.

Here, the defendant argues that he possessed a valid arrest warrant for Mr. Robinson and entered the home in question under the reasonable belief that Mr. Robinson was a resident of the home and that he was then present within the home. As such, the defendant argues that the entry of the home met the requirements of Payton and Steagald.

Upon review of the record, regardless of the reasonableness of the defendant's belief as to whether Mr. Robinson resided in the plaintiff's home and whether he was present there at the time of the entry, there is no evidence in the record that defendant Ruzicki possessed a valid arrest warrant at the time of the entry. The defendant has stated that he was acting pursuant to an Order to Detain, which he contends constituted a valid warrant pursuant to 37 Pa.Code §71.1(d). However, his testimony establishes that he did not physically possess a warrant by way of either a completed Order to Detain or otherwise at the time he approached the plaintiff's residence. In fact, as previously set forth, the defendant testified that he did not recall filling out an Order to Detain Mr. Robinson at all. Furthermore, no such order is contained within the record.

The defendant relies, in part, on this court's decision in Bratton v. Toboz, 764 F.Supp. 965 (M.D.Pa. 1991) in support of his claim. In Bratton, the court concluded that, if the individual for whom a valid arrest warrant exists, is a co-resident of the third party whose home is searched, Payton renders the warrantless search permissible. In that particular case, the court found that because the officers reasonably believed that the suspect was a co-resident at the third party's home, the plaintiff's Fourth Amendment rights were not violated by the warrantless search even though the suspect was not, in fact, a resident. Id. at 972. That case is distinguishable, however, by the fact that the officers in Bratton were actually armed with an arrest warrant at the time of the entry. Other cases relied upon by the defendant are distinguishable on this basis as well. See United States v. Eggleston, 243 Fed.Appx. 715 (3d Cir. 2007); United States v. Agnew, 407 F.3d 193 (3d Cir. 2005); United States v. Veal, 453

3

> [F.3d 164 (3d Cir. 2006)](); [DePaolo v. Brunswick Hills Police Dept., 2007 WL 2071947 (N.D.Ohio Jul. 17, 2007)](); [United States v. Sabur, 2005 WL 2340701 (E.D.Pa. Sep. 22, 2005)]().
>
> The defendant further argues that, in any event, he did not need an arrest warrant for Mr. Robinson, because a specific statute, [61 P.S. §331.27](), granted him the lawful authority to arrest Mr. Robinson without a warrant for failing to report after being released from prison on parole. However, while §331.27 addresses the authority of a parole officer to arrest a parole violator without a warrant, it does not address the issue of an officer's authority to enter the home of a third party without a search warrant in order to effectuate the arrest.
>
> Given the above, entry into the plaintiff's home without a search warrant would be justified only if the entry were consensual or if there were exigent circumstances to justify the entry. There appears to be no dispute as to the fact that the entry was not pursuant to exigent circumstances. The parties do dispute, however, whether the entry was consensual. To this extent, the plaintiff claims that she heard an individual threaten to kick in her door. She claims that she subsequently attempted to use her foot and shoulder to prevent the defendant from opening the door, but that defendant Ruzicki pushed his weight against the door and entered her home forcibly. The defendant, on the other hand, contends that the plaintiff eventually opened the door consensually. He further claims that the plaintiff did not try to hold the door closed and that the officers never forced their way into the plaintiff's home. Therefore, there is a genuine issue of material fact as to whether the officers' entry into the plaintiff's home was consensual and consequently permissible pursuant to the Fourth Amendment."

(Doc. No. [35]())(footnotes omitted).

Given the court's ruling on the defendant's motion for summary judgment, the case proceeded to a jury trial on February 23, 2009, on the issue of whether defendant Ruzicki's entry into the plaintiff's home was consensual. At the close of the plaintiff's case, the defendant made his initial Rule 50 motion for the reasons previously stated in his motion for summary

4

judgment. In the alternative, defendant Ruzicki argued that he was entitled to qualified immunity because the law governing these circumstances was not well-established and that a Pennsylvania statute authorized the warrantless arrest of parole absconders. The court denied the defendant's oral motion on both grounds. In doing so, the court agreed that an officer with an arrest warrant would have the right to go into the parolee's <u>own</u> house without a search warrant, but questioned whether they would have the right to go into a third-party's house. The court found that it would not. The court went on to find that " . . . assuming that the parole violator had in fact resided at Ms. Ulitchney's house, and that was in fact his residence, that may have well changed the circumstances had there been a warrant." Because the record indicated that the defendant had no warrant, the court found that he was not authorized to enter a third-party's residence to effect an arrest.

As a result of the court's ruling, the jury trial proceeded. On the following day, the jury returned a verdict in favor of the plaintiff finding that defendant Ruzicki entered the plaintiff's home without her consent. The jury awarded compensatory and punitive damages.

On March 10, 2009, defendant Ruzicki renewed his motion for judgment as a matter of law arguing again that he was permitted to enter the plaintiff's residence without a search warrant on the basis that he reasonably believed that the subject of a lawful arrest resided at, and was present inside, the residence. In the alternative, defendant Ruzicki again argues that, should the

court disagree with him on the Fourth Amendment issue, he is entitled to qualified immunity. (Doc. No. 71). On April 10, 2009, defendant Ruzicki filed a brief in support of his post-trial motion. (Doc. No. 76). The plaintiff filed an opposing brief on April 28, 2009. (Doc. No. 77). On May 8, 2009, defendant Ruzicki filed a reply brief. (Doc. No. 78).

## II. LEGAL STANDARD

Rule 50(b) of the Federal Rules of Civil Procedure provides that a party may file a renewed motion for judgment as a matter of law following the completion of a jury trial. In considering such a motion, the court may: (1) allow judgment on the verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law. Fed.R.Civ.P. 50(b).

Judgment as a matter of law is rendered pursuant to Rule 50 when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 149 (2000)(citing Fed.R.Civ.P. 50(a)). The court is to review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party. Id. at 150. However, when reviewing the record, the court may not make credibility determinations or weigh the evidence. Id. Judgment may be directed when the facts are sufficiently clear such that the law requires a particular result. Weisgram v. Marley Co., 528 U.S. 440, 448 (2000).

The standard for reviewing the grant or denial of pre-verdict and post-verdict motions for judgment as a matter of law is identical. As such, in ruling on a post-trial motion, the court should not base its conclusions, in whole or in part, on the jury's determinations or attempt to apply or refute particular findings of the jury. See Chaney v. City of Orlando, 483 F.3d 1221, 1228 (11th Cir. 2007)(jury findings are not germane to legal analysis of renewed motion for judgment as a matter of law))(citations omitted).

## III. DISCUSSION

In considering the defendant's most recent motion, the court has determined that its previous ruling was in error. In that prior ruling, the court focused primarily on the need for an actual warrant prior to entry into the third-party plaintiff's home and focused less on the breadth of the Pennsylvania statute and the circumstances surrounding the arrest of Mr. Robinson, which are relevant to the issue of whether a warrant was, in fact, required in this case.

Although familiar to the parties, the court will again set forth the facts pertinent to ruling on the plaintiff's Fourth Amendment unlawful entry claim. Claudie Robinson was an individual released from state prison to parole on July 17, 2006. He had been serving a prison sentence for convictions related to firearms and possession of cocaine with intent to deliver. Although Mr. Robinson was aware that he was required to report to a Community

Corrections Center in Reading, Pennsylvania, he "went on the run" and absconded from parole supervision.

While on the run, in October of 2006, Mr. Robinson met the plaintiff in Wilkes-Barre, Pennsylvania. He and the plaintiff began dating. Shortly thereafter, the plaintiff asked Mr. Robinson to stay with her in her home after an incident wherein an unknown gentleman entered her home while she was asleep on the couch. Mr. Robinson then began spending "a lot of time" at the plaintiff's residence. He received mail at the plaintiff's address, and eventually obtained an official photo identification card from a Pennsylvania driver's license center, as well as a Social Security card and a birth certificate, indicating in the applications for each that his place of residence was 305 Park Avenue, Wilkes-Barre, Pennsylvania, which is the residence at issue.

Sometime after Mr. Robinson used the Wilkes-Barre address to obtain his photo identification, defendant Ruzicki, who is a Pennsylvania parole supervisor for the Wilkes-Barre area, received an e-mail that Mr. Robinson may be residing at the Wilkes-Barre address. As a result of having received this e-mail, Mr. Ruzicki contacted Terry Vieney, a parole agent, who was a neighbor of the plaintiff, and relayed the information he had received about Mr. Robinson. Thereafter, the defendant provided Agent Vieney and the Wilkes-Barre Police with photographs of Mr. Robinson and met with them to discuss surveillance of the residence.

After discussing the matter with the defendant, Agent Vieney began to

conduct surveillance of the residence, and on December 11, 2006, observed a man fitting Mr. Robinson's description and matching the photograph of Mr. Robinson at the residence. Agent Vieney contacted the defendant, who instructed the agent to continue watching the residence to assure that Mr. Robinson did not leave. Shortly thereafter, the defendant, accompanied by four Wilkes-Barre police officers, arrived at the residence to arrest Mr. Robinson. The defendant admits that he had neither an arrest warrant for Mr. Robinson, nor a search warrant for the residence. The defendant ultimately entered the residence in order to effect the arrest of Mr. Robinson. The question in this case is, and has always been, whether the defendant's warrantless entry into the residence to arrest Mr. Robinson was lawful under the Fourth Amendment.

The starting point of the court's analysis is the Pennsylvania statute which defines the powers of parole officers, upon which the defendant relies to support his claim that he was entitled to arrest Mr. Robinson without a warrant. This statute provides:

> Parole officers appointed by the board are hereby declared to be peace officers and are hereby given police power and authority throughout the Commonwealth to arrest without warrant, writ, rule or process any parolee or probationer under the supervision of the board for failing to report as required by the terms of his probation or parole, or for any other violation thereof.

61 Pa.C.S.A. §6152 (formerly 61 P.S. §331.27)[2]/[3]. The Pennsylvania Supreme Court in Commonwealth ex rel. Sparks v. Russell, 169 A.2d 884 (Pa. 1961), explained the rationale underlying the powers given to parole officers by noting that offenders released from confinement on parole remain in the legal custody of the Commonwealth and remain under the control of the Commonwealth until the expiration of their maximum sentence. While parole is an amelioration of punishment, it remains the legal equivalent of imprisonment, so that offenders may be arrested for a violation of parole without a warrant being issued for their arrest. The record in this case

---

[2] Several states have enacted similar statutes allowing for the warrantless arrest of parole violators by parole officers. See e.g., L.S.A.-R.S. 15:574.8; N.H. Rev. Stat. §504-A:4; W. Va. Code §62-12-15.

[3] The court notes that there is an administrative regulation which addresses the arrest of parole violators. 37 Pa.Code §71.1. Although the plaintiff describes the language of the regulation as mandatory and argues that the defendant failed to follow the provisions of the regulation, as set forth in the court's prior decision, the language of the regulation is, in fact, discretionary stating that the agent "may" apply to his district supervisor for permission to arrest and for the issuance of a Warrant to Commit and Retain or that the agent "may" utilize an Order to Detain for 48 Hours as a warrant to commit and retain the parolee.

The plaintiff also argues that the regulation is unconstitutional because it allows parole officers to issue their own arrest warrants without the consideration of a neutral, detached magistrate. In considering this argument, above and beyond the regulations, Pennsylvania parole officers have been given broad statutory powers to arrest without any warrant. As discussed herein, the rationale behind the broad powers given to parole officers was set forth by the Pennsylvania Supreme Court in Commonwealth ex rel. Sparks v. Russell, 169 A.2d 884 (Pa. 1961).

10

supports that Mr. Robinson did, in fact, violate the conditions of his parole by not reporting to the Community Corrections Center and absconding. Therefore, the court agrees that the Pennsylvania statute gave the defendant the power to arrest Mr. Robinson without a warrant for a violation of his parole.

The plaintiff also agrees that the Pennsylvania statute permits parole agents to make warrantless arrests of parole violators, but argues that it does not authorize entry into a third party's home without a search warrant to do so. As set forth above, the court has expressed the same sentiment, (i.e., that the statute does not address the warrantless entry into the home of a third party in order to effect the arrest of a parole violator), on the record in this case both in its prior opinion and on the record addressing the defendant's initial Rule 50 motion. In doing so, however, the court's focus in this case was on the lack of an actual arrest warrant and not on the fact that, if the defendant had the right to arrest Mr. Robinson without a warrant pursuant to the statute, he was essentially placed in the same position as an officer who actually possessed a valid arrest warrant, as the court now finds.

As previously set forth, under Payton and Steagald, entry into a residence without a search warrant is impermissible **unless** (1) the entry is into a suspect's own home; (2) pursuant to a valid arrest warrant; and (3) with reason to believe that the suspect is inside. Payton, 445 U.S. at 602.

Having found that the defendant was essentially placed in the position

of an officer in possession of a valid arrest warrant, the focus then turns to the defendant's reasonable beliefs with respect to the residency of Mr. Robinson. If the defendant reasonably believed that Mr. Robinson was a co-resident in the plaintiff's home, then the Fourth Amendment rights of the plaintiff would not have been violated by the warrantless search, even if Mr. Robinson was not, in fact, a resident there. Bratton v. Toboz, 764 F.Supp. 965 (M.D.Pa. 1991)[4]. To determine whether an officer has reason to believe that a suspect is residing in and present in a residence[5], the courts must apply a "common

---

[4] The court previously distinguished Bratton solely on the basis that the defendant did not have a valid arrest warrant in hand at the time of his entry into the residence. This was an incorrect interpretation by the undersigned of the position in which the Pennsylvania statute places a parole officer.

[5] In United States v. Porter, 2008 WL 2333074 (3d Cir. Jun. 9, 2008), the Third Circuit raised the issue of whether the appropriate standard is "probable cause" or "reason to believe" that a suspect is residing at and located within a particular location. In doing so, the Third Circuit stated:

> [This] Court in [United States v. Agnew, 407 F.3d 193 (3d Cir. 2005)] cited Payton as requiring a showing of probable cause before police may enter a dwelling in which a suspect is believed to be located, Agnew, 407 F.3d at 196. However, the express language of the Supreme Court in Payton was that there need only be "reason to believe" the suspect is within. Payton, 445 U.S. at 603, 100 S.Ct. 1371, 63 L.Ed.2d 639. Obviously, this Court cannot change what the Supreme Court said and the Court in Agnew gave no explanation for citing Payton as requiring probable cause. We believe the reference to Payton as requiring a showing of probable cause was an error. This court in United States v. Veal, 453 F.3d 164, 167 n.3 (2006), recognized this
> (continued...)

sense approach" and consider "the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality." [United States v. Veal, 453 F.3d 164, 167-68 (3d Cir. 2006)](quoting United States v. Magluta, 44 F.3d 1530, 1535, 1536 (11th Cir. 1995)).

Considering the totality of the facts and circumstances within the knowledge of the defendant in this case, the court finds that there was probable cause for the defendant to believe that Mr. Robinson was residing at the residence in question and that he was located inside of the residence at the time of the entry. To this extent, the defendant had received an e-mail containing information that Mr. Robinson had absconded and may have been residing at the plaintiff's address. He further had information that Mr. Robinson had been using the plaintiff's address as his own, had received mail at this address and that he had listed the address as his residence on applications used to obtain official government documents including a non

---

⁵(...continued)
potential error but, having found that the probable cause standard was met in that case, declined to further address the issue.
[Porter, 2008 WL 2333074 *2, n.3](#).
    The court in Porter, as did the court in Veal, found that the officers had both reason to believe and probable cause to believe that the suspect was in the residence entered into and, therefore, did not further comment on the issue of which standard was appropriate.
    Regardless of the standard to be applied, as did the courts in Porter and Veal, this court finds that the higher standard of probable cause has been met.

13

drivers photo identification, Social Security card and a birth certificate. Moreover, Agent Vieney reported to the defendant that, in conducting surveillance of the residence, he had seen an individual matching Mr. Robinson's description and photograph at the residence on the day in question. Agent Vieney continued to conduct surveillance of the residence to assure that Mr. Robinson did not leave until the defendant arrived. Given this information, a reasonable officer could have concluded that Mr. Robinson resided at the address in question and that he was present at that location at the time of the entry. Therefore, the court finds that the entry into the plaintiff's home by a Pennsylvania Parole Agent, without a search warrant but pursuant to 61 Pa. C.S.A. §6152, for the purpose of effecting the arrest of Mr. Robinson, a Pennsylvania parole violator, was permissible under the Fourth Amendment. The defendant's motion for judgment as a matter of law must be granted on this basis.

The court notes that, if this were simply the case of a parole officer entering the home of a <u>third</u> <u>party</u> to effect the arrest of a parole violator, without reason to believe that the residence was, in fact, that of the violator, the court would agree with the plaintiff that the entry without a search warrant was unlawful. However, in a case, such as the one at hand, where there is sufficient reason to believe that the violator <u>actually</u> <u>resided</u> in the residence, and that he was present in the residence at the time of the entry, the court finds that the entry into the home was permissible without a search warrant

14

under the relevant Pennsylvania Statute and Payton.

In light of the foregoing, the court need not address the issue of whether the defendant is entitled to qualified immunity on the facts of this case.

As a final matter, in her brief opposing the defendant's motion for judgment as a matter of law, the plaintiff notes a stipulation entered into by the parties at trial, which read as follows:

> It is hereby agreed by the parties that neither defendant Jeff Ruzicki nor any other law enforcement officials present at Shelly Ulitchney's home possessed any warrant on December 11, 2006 when they approached Shelly Ulitchney's residence. When a law enforcement official does not possess a warrant, that official may only enter the private residence of an individual, such as plaintiff Shelly Ulitchney, with the voluntary consent of that individual.

Based upon the language of the stipulation, the plaintiff argues that the defendant cannot now assert that the warrantless entry was lawful.

With respect to this argument, factual "[s]tipulations fairly entered into are favored," as a way to "expedite a trial and eliminate the necessity of much tedious proof." Burstein v. United States, 232 F.2d 19, 23 (8th Cir. 1956). As a result, "parties to a lawsuit are free to stipulate to factual matters." Saviano v. Commissioner of Internal Revenue, 765 F.2d 643, 645 (7th Cir. 1985). Moreover, the court agrees that, once entered into, such factual stipulations should not lightly be set aside. Waldorf v. Shuta, 142 F.3d 601, 606 (3d Cir. 1998)(citing Kohn V. American Metal Climax, Inc., 458 F.2d 255, 307 (3d Cir. 1972)). Generally, factual stipulations made during trial may not be disregarded or set aside at will. Marshall v. Emersons Ltd., 593 F.2d 565, 569

(4th Cir. 1979)(citing Maryland Cas. Co. v. Rickenbaker, 146 F.2d 751, 753 (4th Cir. 1944)). However, issues of law are the province of the courts, not of parties to a lawsuit. As such, courts are not bound by those stipulations which involve questions of law. Estate of Sanford v. Commissioner, 308 U.S. 39, 51 (1939). See also Neuens v. City of Columbus, 303 F.3d 667, 670 (6th Cir. 2002); Gander v. Livoti, 250 F.3d 606, 609 (8th Cir. 2001); Dedham v. Water Co., Inc. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 457 (1st Cir. 1992); Sinicropi v. Milone, 915 F.2d 66, 68 (2d Cir. 1990). Whether the warrantless entry into the plaintiff's home by the defendant was in violation of the Fourth Amendment is clearly a legal issue. Therefore, the factual stipulation entered into by the parties in this case at trial would not be binding to the extent that it encompasses a question of law for the court.

As a final matter, the court is not unaware that the parties and counsel have expended significant effort, energy and expense in litigating this case. While cognizant that overturning the prior ruling is an unusual occurrence, the court is duty bound to correct errors, especially its own, to insure that its rulings comport with the law. I regret any inconvenience this causes the parties or counsel, however, the error must be corrected.

**IV. CONCLUSION**

Based upon the foregoing, **IT IS HEREBY ORDERED THAT:**

**(1)** the defendant's motion for judgment as a matter of law,

**(Doc. No. 71)**, is **GRANTED** as discussed above; and

**(2)** the Clerk of Court is directed to enter judgment in favor of the defendant.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION
United States Magistrate Judge**

**Date:** December 30, 2009
O:\shared\MEMORANDA\2007 MEMORANDUMS\07-2189-02.wpd